UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

KENNETH ANDERSON                         CIVIL ACTION

VERSUS                                   NO: 11-812

GLOBALSANTAFE OFFSHORE                   SECTION: R(4)
SERVICES, INC.

**ORDER AND REASONS**

Defendant GlobalSantaFe Offshore Services, Inc. ("GlobalSantaFe") contests this Court's personal jurisdiction over it and moves to dismiss.[1] Plaintiff Kenneth Anderson opposes the motion.[2] Because plaintiff does not make a *prima facie* showing of minimum contacts justifying the Court's jurisdiction, GlobalSantaFe's motion is GRANTED.

**I.   BACKGROUND**

This case arises out of an incident that occurred in connection with plaintiff Kenneth Anderson's employment as an offshore installation manager aboard the DEEPWATER FRONTIER. Anderson alleges that on August 10, 2010, he sustained a severe lower back injury while being transported via bus from Gadimoga, India to Rajahmundry, India.[3] The DEEPWATER FRONTIER rig was located off the coast of India. Workers were transported by road

---

[1]    R. Doc. 70.

[2]    R. Doc. 77.

[3]    R. Doc. 1 at 4.

from the city of Rajahmundry to a heliport on the coastline, from
which they were flown to the rig. Anderson alleges that his
injury occurred while being transported by bus from the coastline
back to Rajahmundry. He alleges that the bus was in poor
condition and lacked proper seatbelts. Upon hitting a speed bump
or washout in the road, Anderson says he was thrown into the air
and then slammed down on his seat causing a herniation of his
lumbar spinal discs. Anderson sought treatment in September 2010,
the month after the injury, and underwent a microsurgical
discectomy at the L5-S1 level of his spine. He subsequently
underwent a lumbar fusion surgery on May 10, 2012. Anderson says
that he was an employee of defendant GlobalSantaFe at the time of
the injury. Anderson filed suit against GlobalSantaFe and
Transocean Offshore USA, Inc. on April 12, 2011.[4] The Court
granted Transocean Offshore USA, Inc. judgment as a matter of law
on December 18, 2012.

Defendant GlobalSantaFe is a Cayman Island Corporation which
conducts some of its business activities in Houston, Texas.[5]
GlobalSantaFe is a payroll company that issues pay checks and W-2
forms to approximately 300 U.S. nationals working outside of the

---

[4] *Id.*

[5] R. Doc 38-7 at 20-22 (Bradley McKenzie, the global payroll
manager for Transocean Offshore Deepwater Drilling, Inc.
("TODDI"), a related corporate entity, testified that some
GlobalSantaFe activities took place in Houston, Texas.).

United States on oil rigs, about 40 of which, including Anderson, are Louisiana residents.[6] GlobalSantaFe and defendant Transocean Offshore USA, Inc. are both indirectly owned by Transocean Ltd., a Swiss corporation and the world's largest offshore drilling contractor.[7] Plaintiff's complaint states that GlobalSantaFe is a foreign corporation doing business within the State of Louisiana.[8] On September 25, 2012, GlobalSantaFe filed this motion to dismiss contending that, notwithstanding the allegations in plaintiff's complaint, GlobalSantaFe lacks sufficient contacts with the State of Louisiana to be subject to this Court's jurisdiction.

## II.  STANDARD

Personal jurisdiction "is an essential element of the jurisdiction of a district court, without which it is powerless to proceed to an adjudication." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999)(internal citation omitted). When a nonresident defendant moves the court to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the plaintiff bears the burden to show that personal jurisdiction exists. *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). When the court

---

[6] *Id.* at 5, 15.

[7] R. Doc. 14.

[8] R. Doc. 1 at 1.

3

rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, as in the present case, the nonmoving party need only make a *prima facie* showing. *Godhra v. United States Tobacco Co., Inc.*, 188 F.3d 619, 625 (5th Cir. 1999). The allegations of the complaint, except as controverted by opposing affidavits, must be taken as true, and all conflicts in the facts must be resolved in favor of plaintiffs. *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985).

A court has personal jurisdiction over a nonresident defendant if (1) the forum state's long-arm statute confers personal jurisdiction over that defendant, and (2) the forum state's exercise of jurisdiction complies with the Due Process Clause of the Fourteenth Amendment. *Latshaw v. Johnson*, 167 F.3d 208, 211 (5th Cir. 1999). Because Louisiana's long-arm statute, La. R.S. § 13:3201, *et seq.*, extends jurisdiction to the full limits of due process, the Court's focus is solely on whether the exercise of its jurisdiction in this case satisfies federal due process requirements. *Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 336 (5th Cir. 1999)(citing La. R.S. § 13:3201(B)).

The exercise of personal jurisdiction over a nonresident defendant satisfies due process when (1) the defendant has purposefully availed itself of the benefits and protections of the forum state by establishing "minimum contacts" with that state, and (2) exercising personal jurisdiction over the

defendant does not offend "traditional notions of fair play and substantial justice." *Latshaw*, 167 F.3d at 211 (citing *Int'l Shoe Co. v. Wa.*, 326 U.S. 310, 316 (1945)).

There are two ways to establish minimum contacts: specific jurisdiction and general jurisdiction. *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994). General jurisdiction will attach, even if the act or transaction sued upon is unrelated to the defendant's contacts with the forum state, if the defendant has engaged in "continuous and systematic" activities in the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984); *Wilson*, 20 F.3d at 647. Contacts between a defendant and the forum state must be "extensive" to satisfy the "continuous and systematic" test. *Submersible Sys., Inc. v. Perforadora Cent., S.A. de C.V.*, 249 F.3d 413, 419 (5th Cir. 2001). *See also Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S.Ct. 2846, 2853-54 (2011)("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation it is an equivalent place, one in which the corporation is fairly regarded as at home.").

Specific jurisdiction exists when a nonresident defendant "has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities." *Panda Brandywine Corp. v. Potomac*

5

*Elec. Power Co.*, 253 F.3d 865, 867 (5th Cir. 2001); *Helicopteros*, 466 U.S. at 414 n. 8. Minimum contacts may be established by actions, or even just a single act, by the nonresident defendant that "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

"When the cause of action relates to the defendant's contact with the forum, the 'minimum contacts' requirement is satisfied, and 'specific' jurisdiction is proper, so long as that contact resulted from the defendant's purposeful conduct and not the unilateral activity of the plaintiff." *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 374 (5th Cir. 1987); *see also Hanson v. Denckla*, 357 U.S. 235, 253 (1958)("The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State."). This restriction on the minimum contacts inquiry ensures that the defendant "purposefully availed" itself of the benefits of the forum state such that it could "reasonably anticipate being haled into court there." *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 214 (5th Cir. 2000)(internal quotations omitted)(quoting *Burger King*, 471 U.S. at 474); *see also Bearry*, 818 F.2d at 375.

6

## III. DISCUSSION

Plaintiff presents several personal jurisdiction arguments. First, Anderson argues that this Court has general jurisdiction over GlobalSantaFe. Alternatively, Anderson argues that jurisdiction is proper under Federal Rule of Civil Procedure 4(k)(2), because GlobalSantaFe is not subject to jurisdiction in any state's courts of general jurisdiction and exercising personal jurisdiction is nevertheless consistent with the United States Constitution and laws. Anderson also argues that jurisdiction over GlobalSantaFe is proper because it shares an identify with TODDI, which has affirmatively filed actions in the Eastern District of Louisiana. Finally, in his supplemental memorandum following oral argument, Anderson for the first time argues that GlobalSantaFe waived any objection to personal jurisdiction by participating in the case for more than a year before filing its motion to dismiss based on lack of personal jurisdiction. Mindful of Anderson's low evidentiary burden, and after taking as true his uncontroverted allegations and resolving any factual conflicts in favor of Anderson, the Court holds that Andersen has failed to make out a *prima facie* case of personal jurisdiction over GlobalSantaFe.

*A. General Jurisdiction*

In his response to defendant's motion to dismiss, plaintiff alleges the following facts pertaining to the Court's general jurisdiction over GlobalSantaFe:

> GSF has 40 or more employees who actually live permanently in the State of Louisiana. Mr. Anderson personally conducted business on behalf of GSF while he lived in the State of Louisiana from his home. GSF transferred funds into the State of Louisiana in order to pay Mr. Anderson (and presumably many more of its Louisiana resident employees).
>
> GSF benefited [*sic*] greatly by sending its Louisiana resident employees including Mr. Anderson to training which occurred in the State of Louisiana as well as medical physical exams which also occurred within the State of Louisiana.[9]

Anderson also received W-2's from GlobalSantaFe, accessed work documents online, took online training courses, and worked from home while in Louisiana.[10]

Anderson argues that cases from this Court and others support a finding of general jurisdiction based on the above facts. In all of the cases he cites, however, the courts found specific jurisdiction rather than general jurisdiction. *See Lionheart Dev., LLC v. Apex Bldg. Sys., LLC*, CIV A 08-4070, 2009 WL 35348 at *4 (E.D. La. Jan. 5, 2009)(finding specific

---

[9] R. Doc. 77 at 23.

[10] Defendants argue that GlobalSantaFe should not even be considered Anderson's employer because GlobalSantaFe is simply a payroll company used by his true employer, Transocean Offshore International Ventures, Ltd. R. Doc. 48 at 1. It is unnecessary to decide whether GlobalStanaFe is Anderson's employer because jurisdiction over GlobalSantaFe is absent either way.

jurisdiction based on contracts to deliver modular homes to
Louisiana and activities in Louisiana in connection with the
contracts); *Home Decor of Elmwood Oaks, LLC v. Jiyou Arts &
Frames Co.*, CIV.A. 08-0762, 2009 WL 273193 at *4 (E.D. La. Jan.
23, 2009)(finding specific jurisdiction based on a contract to
supply goods in Louisiana and ongoing deals with a Louisiana
buyer); *Clark v. Moran Towing & Transp. Co., Inc.*, 738 F. Supp.
1023, 1030 (E.D. La. 1990) (finding specific jurisdiction in
Jones Act personal injury case based on employer's recruiting and
hiring activities in Louisiana). A finding of general
jurisdiction is distinct from and requires a much higher level of
contacts than a finding of specific jurisdiction. *Helicopteros
Nacionales,* 466 U.S. at 415; *Wilson*, 20 F.3d at 647. Plaintiff's
references to specific jurisdiction cases, therefore, add no
support to his argument for general jurisdiction.

Case references aside, Anderson falls far short of
establishing a *prima facie* case that GlobalSantaFe has conducted
"continuous and systematic activities" in Louisiana such as to
warrant the Court's exercise of general jurisdiction over it.
*Helicopteros Nacionales,* 466 U.S. at 415. GlobalSantaFe's
issuance of paychecks and W-2 forms to 40 Louisiana domiciliaries
for work conducted abroad cannot lead to the conclusion that
Louisiana is a place "in which the corporation is fairly regarded
as home." *Goodyear*, 131 S.Ct. at 2853-54 (2011). All of the other

contacts Anderson alleges are his own unilateral activities and
"cannot satisfy the requirement of contact with the forum State."
*Hanson,* 357 U.S. at 253 (1958). Anderson's decision to live in
Louisiana during his time off from work on the rig does nothing
to show that the defendant purposefully availed itself of the
benefits of the forum state such that it could "reasonably
anticipate being haled into court there." *Alpine View Co.* 205
F.3d at 214.

The Supreme Court's standard for finding general
jurisdiction over foreign corporations requires greater
connections with the forum state than plaintiff has alleged.
*Helicopteros Nacionales,* 466 U.S. at 415. In *Helicopteros*, the
Colombian defendant corporation had negotiated with business
partners in Texas, purchased its fleet of helicopters, equipment,
and training services from a Texas helicopter manufacturer, sent
prospective pilots to Texas for training and to pick up aircraft,
sent management and maintenance personnel to visit a supplier's
plant for technical consultation, and received over $5 million in
payments from a bank in Texas. 466 U.S. at 410. The Supreme Court
held that those contacts with Texas were insufficient to satisfy
the due process requirements for general jurisdiction. *Id.* at
418-19. GlobalSantaFe's contacts with Louisiana are fewer and
less substantial than those deemed insufficient in *Helicopteros
Nacionales*. Anderson has therefore failed to establish a *prima*

*facie* case that GlobalStantaFe's conduct in and contacts with Louisiana justify the exercise of general jurisdiction over it by this Court.

*B. Specific Jurisdiction*

In his memorandum in opposition of the motion to dismiss, plaintiff characterizes his jurisdictional argument as one about general jurisdiction. However, in his post-hearing memorandum, plaintiff now argues that specific jurisdiction over GlobalSantaFe was proper. A court may exercise specific jurisdiction over a defendant when the cause of action "arises out of" or "relates to" activities defendant has purposefully directed at Louisiana. *Panda Brandywine*, 253 F.3d at 867. Anderson alleges that his injury occurred while being transported by bus in India. He does not explain how the injury abroad arises out of GlobalSantaFe's activities in Louisiana. Nevertheless, *Clark v. Moran Towing & Transp. Co., Inc.*, cited by plaintiff, held that injury outside of the forum state does not necessarily preclude specific jurisdiction. 738 F. Supp. at 1030. The plaintiff in *Clark* was injured while working on a vessel off the coast of New York, and he brought a Jones Act suit against his employer in Louisiana. The employer had purposefully directed recruitment activities toward Louisiana, advertised in local newspapers, and interviewed Louisiana citizens, resulting in the employment of several Louisiana seamen, including the plaintiff.

The *Clark* court characterized the Jones Act injury suit as arising out of or relating to the "employment relationship, which was established pursuant to defendant's purposeful conduct and activities directed towards Louisiana and its citizens." *Id.*

The *Clark* decision does not control this case for two reasons. First, unlike in *Clark,* the plaintiff here has failed to allege any recruitment, advertising, or other proactive activity that defendant has directed toward Louisiana. The only activities that Anderson points to are his own unilateral conduct and GlobalSantaFe's issuance of pay and W-2 forms to Louisiana domiciliaries for work completed elsewhere. Unilateral activities by the plaintiff cannot be the basis for establishing minimum contacts. *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 375 (5th Cir. 1987).

Further, recruiting and hiring a plaintiff in the forum state, with nothing more, is not sufficient to establish specific jurisdiction when the cause of action arises from injuries abroad. *See Estigoy v. OSG Car Carriers, Inc.*, 33 F. App'x 844, 846 (9th Cir. 2002)(defendant's hiring of plaintiff in Hawaii through recruiting efforts of the Seafarers International Union was not enough to provide jurisdiction there, because the defendant did not have any other purposeful contacts with Hawaii); *see also O'Quinn v. World Indus. Constructors, Inc.*, 874 F. Supp. 143 (E.D. Tex. 1995) *aff'd sub nom. O'Quinn v. World*

12

*Indus. Const.*, 68 F.3d 471 (5th Cir. 1995). In *O'Quinn*, the defendant, World Industrial Contractors, had contracted with a recruiting service, Merit Industrial Contractors, through which it hired the plaintiff, a Texas resident, to work on a construction project in the Virgin Islands. Merit Industrial Contractors set up an office in Texas and recruited the plaintiff there. The defendant contesting jurisdiction, World Industrial Contractors, had no connections with Texas other than its contract for recruiting services with Merit Industrial Contractors. The *O'Quinn* court first ruled that Merit Industrial Contractors was merely an independent contractor, and its activities in Texas should not be imputed to the defendant. But the court went on to say that, "[e]ven if Merit was an agent of World, this court would lack specific personal jurisdiction as the cause of action (unsafe working conditions) does not arise out of nor is it connected with the recruiting function." *Id.* at 146.

*Freudensprung v. Offshore Technical Services, Inc.*, is another case in which a defendant's hiring of a seaman in a state was insufficient to establish minimum contacts. 379 F.3d 327 (5th Cir. 2004). In *Freudensprung*, the plaintiff was hired by Offshore Technical Services, Inc. ("OTSI"), a Texas corporation that supplies personnel to the offshore hydrocarbon industry to work on offshore platforms. Pursuant to a contract between OTSI and

Willbros West Africa, Inc. ("WWAI"), a Panamanian corporation, WWAI selected the plaintiff from among other candidates referred by OTSI to work on its barge off the coast of Nigeria. Plaintiff was injured while working aboard WWAI's barge. He filed a Jones Act suit in the Southern District of Texas against WWAI and others, and WWAI moved to dismiss for lack of jurisdiction. In affirming the district court's dismissal, the Fifth Circuit held that personal jurisdiction over WWAI in Texas was lacking. First, the court found that because the agreement between OTSI and WWAI absolved WWAI "of the ordinary liabilities flowing to an employer...the instant litigation does not arise out of or relate to WWAI's contacts with Texas." *Id.* at 344. The court also said that "even assuming that the instant controversy could be deemed to arise out of the [employment agreement], the minimum contacts resulting from this agreement, viewed in conjunction with the other contacts alleged by [plaintiff] do not constitute the minimum contacts necessary to comport with constitutional due process." *Id.* Of relevance to the case at hand, the Fifth Circuit emphasized that merely contracting with a resident of the forum state for work done elsewhere is insufficient to subject the nonresident defendant to the forum's jurisdiction:

> [T]his Court has repeatedly held that the combination
> of mailing payments to the forum state, engaging in
> communications related to the execution and performance
> of the contract, and the existence of a contract
> between the nonresident defendant and a resident of the

> forum are insufficient to establish the minimum
> contacts necessary to support the exercise of specific
> personal jurisdiction over the nonresident defendant.

*Id.* (citing *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778
(5th Cir. 1986)(finding no specific jurisdiction over nonresident
defendant when nonresident defendant entered into a contract with
a Texas resident, sent an agreement and checks to Texas, and
engaged in extensive telephonic and written communication with
the plaintiff in Texas); *see also Stuart*, 772 F.2d at 1192-94
(finding no indication that the nonresident defendant intended to
avail himself of the privilege of doing business in Texas and
hence no specific jurisdiction when nonresident defendant
contracted with Texas residents, directed letters and phone calls
to Texas, shipped prototypes and products to Texas, negotiated a
contract with plaintiffs that was to be governed by Texas law,
and marketed his product in Texas)).

Applying these standards here, it is clear that Anderson has
not alleged sufficient minimum contacts to warrant the exercise
of specific jurisdiction over GlobalSantaFe. Anderson argues that
GlobalSantaFe should be deemed his employer because it issued his
pay and W-2 forms. But even assuming the existence of an
employment relationship, Anderson has failed to allege other
contacts with Louisiana. Merely contracting with a resident of
Louisiana and sending money to him here do not indicate that
GlobalSantaFe intended to avail itself of the privilege of doing

business here. *See Freudensprung,* 379 F.3d at 345. Accordingly, the Court finds that GlobalStantaFe lacks sufficient minimum contacts to support specific jurisdiction.

*C. Rule 4(k)(2)*

Anderson argues in the alternative that GlobalSantaFe has purposely availed itself of the United States as a whole and, thus, is subject to the Court's jurisdiction pursuant to Federal Rule of Civil Procedure 4(k)(2), which reads in relevant part:

> For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if:
>
> (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and
>
> (B) exercising jurisdiction is consistent with the United States Constitution and laws.

Fed.R.Civ.P. 4(k)(2). This rule has been applied in cases brought under general maritime law when the defendant has sufficient minimum contacts with the United States as a whole but is not subject to jurisdiction in any particular state. *See World Tanker Carriers Corp. v. M/V YA MAWLAYA*, 99 F.3d 717, 722–23 (5th Cir. 1996). The contacts with the United States must be such that exercising jurisdiction comports with traditional notions of fair play and substantial justice. When a party invokes Rule 4(k)(2), "a piecemeal analysis of the existence *vel non* of jurisdiction in all fifty states is not necessary." *Adams v. Unione Mediterranea Di Sicurta*, 364 F.3d 646, 651 (5th Cir. 2004)(citing *ISI Int'l,*

16

*Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 552 (7th Cir. 2001)). As long "as a defendant does not concede to jurisdiction in another state, a court may use 4(k)(2) to confer jurisdiction." *Id.*

Rule 4(k)(2) is triggered when a plaintiff has served a summons or filed a waiver of service. Fed.R.Civ.P. 4(k)(2). Anderson did not formally serve GlobalSantaFe and GlobalSantaFe did not formally waive service. Because plaintiff failed to satisfy this preliminary requirement of Rule 4(k)(2), the court cannot exercise jurisdiction over GlobalSantaFe under the rule. Thus, the Court need not decide whether GlobalSantaFe's contacts with the United States as a whole are sufficient to justify jurisdiction over it in Louisiana under the Rule.

D. *Single Business Theory*

Anderson urges the Court to impute the Louisiana activities and contacts of Transocean Offshore Deepwater Drilling, Inc. ("TODDI") to GlobalSantaFe as a means of establishing minimum contacts with Louisiana, because TODDI employees based in Houston, Texas exercise control over some GlobalSantaFe activities. Generally, the proper exercise of personal jurisdiction over a nonresident corporation may not be based upon the contacts with the forum state of another corporate entity with which the defendant may be affiliated. *See Cannon Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 333, 335 (1925)(declining to

17

attribute, for jurisdictional purposes, the presence of a subsidiary in the forum state to a nonresident parent corporation when the parent and subsidiary maintained distinct and separate corporate entities); *see also Access Telecom, Inc. v. MCI Telecomm., Corp.*, 197 F.3d 694, 717 (5th Cir. 1999)(noting that "typically, the corporate independence of companies defeats the assertion of jurisdiction over one by using contacts with the other"). The presumption of institutional independence of related corporate entities may be rebutted by "clear evidence," which requires a showing of something beyond the mere existence of a corporate relationship between a resident and nonresident entity to warrant the exercise of jurisdiction over the nonresident. *Dickson Marine, Inc. v. Panalpina, Inc.*, 179 F.3d 331, 338 (5th Cir. 1999). In determining whether a plaintiff has overcome the presumption of corporate separateness in this context, the Court must consider the following nonexhaustive factors: (1) the amount of stock owned by the parent of the subsidiary; (2) whether the entities have separate headquarters, directors, and officers; (3) whether corporate formalities are observed; (4) whether the entities maintain separate accounting systems; and (5) whether the parent exercises complete control over the subsidiary's general policies or daily activities. *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1160 (5th Cir. 1983).

18

Although Anderson states that "TODDI employees effectively run GSF," he has not presented sufficient facts demonstrating that the *Hargrave* factors compel the conclusion that TODDI exerts such control over GlobalSantaFe that the two companies should be considered the same corporation for purposes of jurisdiction.[11] Specifically, Anderson has made no showing that TODDI owned stock in GlobalSantaFe, shares officers and directors with GlobalSantaFe, disregards corporate formalities, shares the same accounting system as GlobalSantaFe, or that TODDI exercises any degree of control over the general policies of GlobalSantaFe. Anderson offers as evidence the deposition of Bradley McKenzie[12] and alleges that TODDI employees "make decisions regarding processing payroll for GSF, transferring of funds into and out of GSF bank accounts and ultimate signatures in regard to hiring and firing individuals for the entity known as 'GSF'".[13] McKenzie's deposition establishes only that TODDI employees issued W-2's on behalf GlobalSantaFe.[14] McKenzie also testified that GlobalSantaFe maintained its own bank account in the Cayman

---

[11] R. Doc. 77 at 20.

[12] R. Doc. 38-7.

[13] R. Doc. 77 at 20.

[14] R. Doc. 38-7 at 19-22.

19

Islands.[15] Although there is evidence of some corporate relationship between TODDI and GlobalStantaFe, it is insufficient to overcome the presumption of corporate separateness.

To be sure, the Court shares some of plaintiff's frustration with the opaque nature of GlobalSantaFe's relationship with the various Transocean entities mentioned in this litigation. Nevertheless, even if the Court could appropriately consider TODDI and GSF as a single business entity, neither company has minimum contacts with Louisiana. There is no evidence in the record indicating that TODDI's contacts with Louisiana are so pervasive as to justify the exercise of general jurisdiction over it by this Court. There is no evidence that TODDI recruited, interviewed, or hired Anderson in Louisiana, or directed him do anything in Louisiana such that his injuries in India could be said to arise out of his employment in Louisiana. It appears that TODDI's only connection to Anderson was processing his pay and W-2 forms in the name of GlobalSantaFe.

Although Anderson does not identify TODDI's connections to Louisiana, he does argue that proper jurisdiction over TODDI can be assumed based on TODDI's affirmative decisions to litigate in Louisiana in the past.[16] This argument fails because consent is a

---

[15] R. Doc. 38-7 at 16.

[16] R. Doc. 77 at 20-21.

20

basis for personal jurisdiction independent of the minimum
contacts inquiry. *Burger King,* 471 U.S. at 486 n. 14 (noting that
"the personal jurisdiction requirement is a waivable right, [and]
a litigant may give express or implied consent to the personal
jurisdiction of the court"). Consenting to jurisdiction in other
cases does not necessarily establish jurisdiction over TODDI in
this case. As such, plaintiff fails to make a *prima facie* showing
that TODDI has minimum contacts with Louisiana sufficient to
justify specific or general jurisdiction over it and its alleged
alter ego GlobalSantaFe.

*E. Waiver of GlobalSantaFe's Objection to Personal Jurisdiction*

        In his post oral argument memoranda, Anderson argues that
GlobalSantaFe should be prohibited from raising a personal
jurisdiction objection because it has been litigating this case
for a year and a half. Anderson is right that "a party may waive
any jurisdictional objections if its conduct does not reflect a
continuing objection to the power of the court to act over the
defendant's person." *PaineWebber Inc. v. Chase Manhattan Private
Bank (Switzerland)*, 260 F.3d 453, 460 (5th Cir. 2001). But
Anderson is wrong in suggesting that GlobalSantaFe, by
participating in discovery and a settlement conference, has
consented to the Court's jurisdiction. GlobalSantaFe pleaded
insufficiency of process and lack of personal jurisdiction in its

answer and thereby preserved those defenses.[17]  Defendant also premised its motion to continue the trial date on the existence of the personal jurisdiction issue.[18] GlobalaSantaFe has not asserted counterclaims, engaged in third-party practice, or made any discovery requests of Anderson. It has done nothing to indicate a waiver of its jurisdictional defense. Anderson cites no case, and the Court finds none, that suggests that defendants actions in this case manifest anything but a "continuing objection" to the Court's exercise of personal jurisdiction over it.

**IV.  CONCLUSION**

For the foregoing reasons, the Court GRANTS the motion to dismiss based on lack of personal jurisdiction.


New Orleans, Louisiana, this **15th** day of February, 2013.

_____
                    SARAH S. VANCE
            UNITED STATES DISTRICT JUDGE

---

[17] R. Doc. 7 at 1-2.

[18] R. Doc. 52-1 at 3.

22